IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTIAN S. IVERSON,               )
          Petitioner,               )
                                    )          Civil Action No. 13-114 Erie
          v.                        )          Magistrate Judge Susan Paradise Baxter
                                    )
BRIAN THOMPSON, et al.,             )
          Respondents.              )

**OPINION AND ORDER**[1]

Presently before the Court is a petition for a writ of habeas corpus filed by state prisoner

Christian S. Iverson. ("Petitioner"). For the reasons set forth below, all of Petitioner's claims are denied

and a certificate of appealability is denied on all claims.

**I.**

**A.**     **Background**[2]

On February 20, 2007, Petitioner shot and killed his wife, Patricia Iverson, by firing a .308 rifle

at her at point blank range, striking her in the neck. He was charged in the Court of Common Pleas of

Warren County with criminal homicide and interception of wire or oral communications. (SCR at 132).

Petitioner originally retained James C. Blackman, Esquire, to represent him. Unfortunately, Blackman

died shortly thereafter and Petitioner next retained James P. Sheets, Esquire, to be his attorney.

Petitioner pleaded guilty to third degree murder. The other count against him (for Interception,

Disclosure, Use of Wire/Oral Communication) was nolle prossed. (SCR at 213). That count was a felony

---

[1]     In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2]     Respondents have filed a hardcopy of the state court record ("SCR"). The documents filed with the Court of Common Pleas of Warren County are contained in two volumes, and a third volume contains the relevant transcripts. The pages in the volumes are Bates stamped and will be cited as "SCR at ___ ").

1

of the third degree and had a maximum penalty of seven years' incarceration and/or a fine of $15,000. (SCR at 873).

On the written plea colloquy that Petitioner signed, he indicated that he was 54 years old, that he went to the 11th grade in school, and that he can read, write, and understand the English language. In response to the question of whether he was being treated for a mental illness, he answered: "No." Petitioner confirmed that there were no promises "to induce [him] to enter [the] plea of guilty[,]" and that he was entering it "of [his] own free will[.]" Importantly, Petitioner also acknowledged that he understood that the maximum sentence for third-degree murder was 20-40 years of imprisonment. (SCR at 188-92).

On December 14, 2007, Petitioner appeared before the Honorable William F. Morgan to verbally enter is plea. Judge Morgan reviewed the written plea colloquy with Petitioner, who stated that he understood and agreed to each of the written paragraphs. (SCR at 868). Judge Morgan asked Petitioner: "Have any promises been made to you as to the sentence the Court would impose upon a plea of guilty?" Petitioner replied: "No, sir." (SCR at 872-73). Petitioner stated that he understood that "the Court could sentence [him] to a maximum possible sentence of 40 years['] imprisonment[.]" (SCR at 879).

The following exchange also occurred between Petitioner and Judge Morgan:

| The Court: | Are you currently being treated for any mental illness? |
| The Defendant: | No. |
| The Court: | Are you taking any prescribed drugs, any psychotropic – |
| The Defendant: | Yes, sir. |
| The Court: | What is that? |
| The Defendant: | One is Sertraline, it's a brand – an off brand of Zoloft. |
| The Court: | And what's the other one? |

| | |
|---|---|
| The Defendant: | And the other one is Amitriptyline, which is just for a nerve on my back that's somewhere and they can't find it and it kind of helps. |
| The Court: | Do either of those medications affect your ability to understand what is going on today? |
| The Defendant: | No, sir. |
| The Court: | Or do they affect your ability to make a decision today? |
| The Defendant: | No, sir. |
| The Court: | - - -<br>Now, have you had a complete opportunity to discuss your plea with Mr. Sheets? |
| The Defendant: | Yes, sir. |
| The Court: | And are you satisfied with the advice he has given you? |
| The Defendant: | Yes, sir. |
| The Court: | Have you been open and honest in telling him everything and discussing everything with him? |
| The Defendant: | Yes, sir, 100 percent. |
| The Court: | Has he refused or neglected to do anything that you have requested of him? |
| The Defendant: | No. |
| The Court: | And do you believe that he is a competent and effective criminal trial attorney? |
| The Defendant: | Yes, sir, we discussed that. |
| The Court: | Do you have any questions regarding your rights or any of the things we've covered here? |
| The Defendant: | No, sir. |

(SCR at 880-81).

Towards the end of the colloquy, Sheets requested that the Court sentence Petitioner at a later

date because "[m]y understanding is that the bottom of the standard range is seven and a half, obviously

3

the top is 20 to 40, and I would like an opportunity to give the Court as much information about this situation and about Mr. Iverson so that the court could reach what the Court felt was an appropriate sentence in this case." (SCR at 884). Judge Morgan agreed to reschedule Petitioner's sentencing.

At the end of the hearing, Petitioner verbally entered his guilty plea to third degree murder. The following exchange occurred:

| | |
|---|---|
| The Court: | … this is the last chance then that you would have to say that you did not commit the crime that you're pleading guilty to; do you understand that? |
| The Defendant: | Yes, sir. |
| The Court: | And do you understand then everything that I've explained and that your attorney and [the prosecutor] have explained and said here in court today? |
| The Defendant: | Yes, sir. |
| The Court: | And after doing so, are you still satisfied that you wish to plead guilty to third degree murder? |
| The Defendant: | Yes, sir. |
| The Court: | …. Also, did anybody promise you anything in regard for a plea? |
| The Defendant: | No, sir. |
| The Court: | Mr. Sheets, then do you know of any reason why I should not accept this plea from your client? |
| Mr. Sheets: | Your Honor, after consulting with Mr. Iverson on more than a few occasions and my discussion with him last evening and this morning, I believe there is a factual basis for a finding of guilt. I also believe that my client is fully aware of his rights, his appellate rights by entering a plea of guilty, and I'm confident that he has done so knowingly, intelligently and voluntarily. |

(SCR at 886-87).

Judge Morgan sentenced Petitioner on February 29, 2008. Petitioner, represented by Sheets, presented statements from the following individuals in person: his coworker and friend, Terry Conklin;

4

his brother, Larry Iverson; and his daughter, Marie Toker. Sheets also read to the court statements from Susan and Edward Clasher, Petitioner's longtime friends, and their son, Timothy; Petitioner's friend, Bruce Gardner; and, two of Petitioner's sisters, Tamara Dwyer and Linda Ingham. (SCR at 895-910).

After presenting the statements in support of Petitioner, Sheets outlined to Judge Morgan the many factors that the defense proposed supported a sentence of less than the maximum range of 20 to 40 years of imprisonment. (SCR at 910-14). The prosecutor countered that Petitioner should be sentenced to "the high end of the standard range[,]" noting that he "shot the victim [at] pointblank [range] with [a] .308 deer riffle[,]" and that "[t]hese facts would have supported a first degree murder conviction, which this Court would be automatically required to impose a life sentence. He was given a break by pleading to third degree murder." (SCR at 915).

At the end of the hearing, Judge Morgan imposed a sentence upon Petitioner of 20-40 years' imprisonment, with credit for time served. (SCR at 922; 199). Petitioner, through Sheets, subsequently filed a Motion to Reconsider Sentence, which Judge Morgan denied on May 16, 2008. (SCR at 222-23, 245).

Over the course of the next several years, Petitioner challenged his judgment of sentence on direct appeal and in collateral proceedings. As Judge Morgan observed at one point, Petitioner's challenges often "followed a rather circuitous route[,]" (SCR at 432) caused in part, but not entirely, by Petitioner's habit of filing *pro se* pleadings and appeals when he was represented by counsel. This Court recites only those facts that are necessary to resolve this federal habeas case.

On or around June 10, 2008, Petitioner filed a *pro se* motion for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* (SCR at 247-54). The court appointed Todd A. Woodin, Esquire, to represent him. In this PCRA proceeding, Petitioner

claimed that his trial attorney, Sheets, provided him with ineffective assistance in violation of his Sixth Amendment rights because he:

(1)     failed to adequately explain the consequences of pleading guilty and the possible sentence that Petitioner would receive;

(2)     should have pursued a mental infirmities defense; and,

(3)     should have filed a direct appeal.

(SCR at 279).

Ineffective assistance claims are governed by the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).[3] Under <u>Strickland</u>, a petitioner must show that his counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 688. The law presumes that counsel was effective. <u>Id.</u> at 689. <u>Strickland</u> also requires that a petitioner demonstrate that he was prejudiced by his counsel's alleged deficient performance. This requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial] proceeding would have been different." <u>Id.</u> at 694. <u>See</u> <u>also</u> <u>Brown v. Wenerowicz</u>, 663 F.3d 619, 630 (3d Cir. 2011).

Judge Morgan presided over evidentiary hearings on Petitioner's claims on July 24, 2009, and August 20, 2009. Petitioner and Sheets testified at the hearings. (SCR at 931-1017). On September 3, 2009, Judge Morgan issued a Memorandum and Order in which he denied Petitioner's first two claims of ineffective assistance on the merits.

In denying Petitioner's first claim, Judge Morgan held:

[Petitioner] has not shown that the underlying claim has arguable merit. During the PCRA Hearing, Attorney Sheets testified that [Petitioner] knowingly, intelligently and

---

[3]     Pennsylvania law for judging ineffectiveness corresponds with the <u>Strickland</u> standard. <u>Commonwealth v. Pierce</u>, 527 A.2d 973, 976-77 (Pa. 1987); <u>Commonwealth v. Kimball</u>, 724 A.2d 326 (Pa. 1999). Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and <u>Strickland</u> sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.

voluntarily entered into the plea. Additionally, both Attorney Sheets and [Petitioner] testified that Attorney Sheets spent approximately 15 to 20 minutes reviewing the written plea colloquy prior to [Petitioner] signing it and prior to [Petitioner] entering his formal guilty plea with the Court. Furthermore, the Court administered an oral plea colloquy on the day [Petitioner] entered his plea and again [Petitioner] acknowledged that he understood all of the contents of the plea colloquy and specifically the fact that the charge of criminal homicide carries a possible maximum sentence of forty years imprisonment, a fine of $50,000 or both, Def's Plea Proceedings at P15, L2-7, and that no promises had been made to [Petitioner] as to what sentence the Court would impose. Id. at P8, L25 to P9, L1-2. Although [Petitioner] testified [at the PCRA hearing] that his guilty plea was contingent upon Attorney Sheets working out a deal for a reduced sentence and he believed that he could withdraw his plea if his attorney was not able to work out such a deal, [Petitioner] nonetheless signed the written plea colloquy and acknowledged to the Court that he understood the terms of his plea in the oral plea colloquy. Neither of these colloquies said anything about a reduced sentence, but rather clearly stated [Petitioner] could receive the maximum sentence of 40 years. Further, [Petitioner] acknowledged at the plea hearing that he had a complete opportunity to discuss the plea with his attorney, that he was satisfied with the advice his attorney gave him, that he believed his attorney was competent and effective, and that he did not have any questions regarding his rights or any of the issues the Court covered in the colloquy. Def's Plea Proceedings at P17, L5-22. Accordingly, it is clear from the record that defense counsel adequately explained the terms of the plea and possible sentence. Thus, the [Petitioner] has not satisfied the first prong of the ineffectiveness test and therefore his First Claim for Relief must fail.

(SCR at 285-86, Commonwealth v. Iverson, CR 194 of 2007, slip op. at 8-9 (C.P. Warren, Sept. 3, 2009)).

In denying Petitioner's second claim of ineffective assistance, Judge Morgan held:

[Petitioner] has failed to satisfy the first prong of the test for ineffective assistance of counsel in regard to this Second Claim for Relief because he has not shown that the underlying claim has arguable merit. . . . [T]here is insufficient evidence in the record for the Court to conclude that [Petitioner] would have succeeded on a mental infirmities defense had Attorney Sheets hired a mental health professional to conduct a psychological evaluation of [Petitioner]. For example, during [Petitioner's] testimony at the PCRA hearing, [Petitioner] testified only that he had been taking medication for depression since approximately 1997 or 1998, he frequently talks to himself, he had approximately five or six attempted suicides in the past ten years, and he and his wife sought some sort of counseling through the Family Services Office for either marital or mental health issues. Furthermore, [Petitioner] testified that on the date of the incident, he had run out of his prescriptions, and had been out for five to eight days. Although [Petitioner] testified that Attorney Blackman told him he would hire an expert to perform a psychological evaluation in order to pursue a mental infirmities defense, [Petitioner's] counsel, Attorney Sheets[,] testified that [Petitioner] told him only of one or two

7

instances of attempted suicide and [Petitioner] was otherwise coherent and cooperative with his defense. Furthermore, Attorney Sheets testified that although he had numerous conversations with [Petitioner] regarding his mental health, he and [Petitioner] *jointly* decided not to pursue a mental infirmities defense. Thus, [Petitioner's] testimony is wholly insufficient to establish a mental infirmities defense. Rather, Attorney Sheets merely refused to pursue a defense that would not be beneficial to [Petitioner]. Accordingly, [Petitioner] has not satisfied the first prong of the ineffectiveness test and therefore his Second Claim for Relief must fail.

(SCR at 286-87, Iverson, CR 194 of 2007, slip op. at 9-10).

Although Judge Morgan determined that Petitioner's first and second PCRA claims had no merit, he did conclude that Sheets should have filed a direct appeal or have assisted Petitioner in obtaining new counsel to handle an appeal. Accordingly, Judge Morgan reinstated Petitioner's right to file a direct appeal. (SCR at 278-89).

Eventually, Joan M. Fairchild, Esquire, was appointed to represent Petitioner and she filed a direct appeal on Petitioner's behalf. (SCR at 425-35). Petitioner's direct appeal was docketed with the Superior Court of Pennsylvania at No. 305 WDA 2010. In that appeal, Petitioner, through Fairchild, raised the following claims:

(1)     Whether the trial court's sentence of 20-40 years' was excessive due to Petitioner's age and rehabilitative needs?

(2)     Whether the District Attorney's statements at the time of sentencing went against the spirit of the plea agreement entered into by the Petitioner and the Commonwealth?

(3)     Whether Sheets was ineffective due to his failure to obtain a psychological evaluation of Petitioner when it was requested by Petitioner due to his mental health history of depression?

(Appellant's Brief in Iverson v. Commonwealth, No. 305 WDA 2010 (Pa.Super. July 28, 2010)).

On November 23, 2010, the Superior Court issued a Memorandum in which it affirmed Petitioner's judgment of sentence. (SCR at 85-95, Commonwealth v. Iverson, No. 305 WDA 2010, slip op. (Pa.Super.Ct. Nov. 23, 2010)). The Superior Court denied Petitioner's first claim on the merits,

denied his second claim as waived for lack of sufficient development, and declined to reach the merits of Petitioner's third claim because, *inter alia*, ineffective assistance of counsel claims should typically be deferred until collateral review.[4]

On June 13, 2011, Petitioner filed a second *pro se* PCRA motion in which he raised numerous claims of ineffective assistance. (SCR at 496-511). Judge Morgan appointed Barbara C. Litten, Esquire, to represent him. Judge Morgan denied, in relevant part, the claims Petitioner raised in his second PCRA motion. (SCR at 524). Petitioner, through Litten, filed an appeal with the Superior Court, which was docketed at No. 1997 WDA 2011. Petitioner raised one claim: that Attorney Sheets was ineffective for failing to investigate and present mental health evidence that would have established a heat of passion/voluntary manslaughter defense. (Appellant's Brief in Iverson v. Commonwealth, No. 1997 WDA 2011 (Pa.Super. May 18, 2012)). This was the same claim that Petitioner had raised in his first PCRA motion, which Judge Morgan denied on the merits in his September 3, 2009, Memorandum Opinion.

On September 7, 2012, the Superior Court issued a Memorandum in which it affirmed Judge Morgan's decision denying Petitioner PCRA relief. (SCR at 100-05, Commonwealth v. Iverson, No. 1997 WDA 2011, slip op. at 1-7 (Pa.Super.Ct. Sept. 7, 2012)). It held that Petitioner's claim failed for the reasons set forth in Judge Morgan's September 3, 2009, Memorandum Opinion. (SCR at 103-04). The Superior Court further added:

> [Petitioner's] argument is flawed because his testimony at the PCRA hearing, even if credited was insufficient to establish a heat of passion defense. The doctrine commonly known as heat of passion (or killing as a result of serious provocation) is codified in 18 Pa.C.S. § 2503, which reads:
>
> § 2503. Voluntary manslaughter.

---

[4]     Attorney Fairchild did not file a petition for allowance of appeal ("PAA") to the Supreme Court of Pennsylvania following the Superior Court's decision on direct appeal. As part of Petitioner's second PCRA proceeding, Judge Morgan reinstated Petitioner's right to file a PAA. (SCR at 592). The Supreme Court of Pennsylvania denied a PAA on May 31, 2012.

(a) General rule. – A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) the individual killed;

* * *

18 Pa.C.S. § 2503(a)(1).

"Under the Crimes Code, a person is guilty of voluntary manslaughter, as opposed to murder, if at the time of the killing he acted under a sudden and intense passion resulting from serious provocation by the victim." Commonwealth v. Mason, 741 A.2d 708, 718 (Pa. 1999) (citations omitted). The provocation necessary for a heart of passion instruction must come from the individual who was killed or the individual the actor endeavors to kill. Commonwealth v. Counterman, 719 A.2d 284, 303-304 (Pa. 1998).

Even if we accepted [Petitioner's] testimony at the PCRA hearing as true and credible, [Petitioner] has nonetheless failed to establish that his wife, the individual who he shot, provoked him in any manner. Instead, [Petitioner's] testimony simply demonstrated that [Petitioner], if he suffered from any provocation at all, it was self-inflicted provocation brought about by his internal feelings and mental processes, and not due to any objective conduct on the part of his wife. Accordingly, [Petitioner's] testimony would not have entitled him to a heat of passion charge had he elected to go to trial. See Counterman, 719 A.2d at 303-04; see also Commonwealth v. Son Truong, 36 A.3d 592, 596 and 600 (Pa.Super. 2012) (en banc) (finding that the defendant was not entitled to a charge on heat of passion, despite "testimony he suffered from severe mental illness; specifically, schizophrenia and depression."); Commonwealth v. Browdie, 654 A.2d 1159, 1163 (Pa.Super. 1995) (concluding that a heat of passion charge was not warranted where the defendant suffered from mental infirmities and stress). Because counsel cannot be deemed ineffective for failing to purse a meritless defense, the PCRA court did not abuse its discretion in denying [Petitioner's] claim. Therefore, we affirm the order of the PCRA court.

(SCR at 104-05, Iverson, No. 1997 WDA 2011, slip op. at 5-7 (footnote omitted)).

Petitioner, through Litten, filed a PAA with the Supreme Court of Pennsylvania. On October 18, 2012, Litten filed a motion to withdraw as Petitioner's counsel, which the Superior Court granted. On April 3, 2013, the Supreme Court of Pennsylvania denied Petitioner a PAA.

Next, Petitioner filed a petition for a writ of habeas corpus with this Court pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132,

10

110 Stat. 1214, April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. Id.; see, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). See also Real v. Shannon, 600 F.3d 302, 309-10 (3d Cir. 2010).

Petitioner raises the following nine claims for relief:

**Claim One:** Sheets was ineffective for failing to obtain a psychological evaluation when Petitioner articulated facts which arguably indicated the presence of a mental infirmity (major depression, suicides, and medication). Counsel's failure to obtain a psychological evaluation, in light of these facts, were not in his client's best interest because it was not reasonable for counsel to make a determination about Petitioner's mental state without the benefit of an evaluation by a trained expert.

**Claim Two:** Sheets and his partner Guessippi Rosselli failed to conduct a full and timely investigation into Petitioner's background: abused childhood and repeated abuse by his wife. Sheets coerced Petitioner and witnesses not to mention any of the abuse known to them.

**Claim Three:** Sheets failed: (1) to pursue the following critical witnesses: Petitioner and his wife's counselor, Larry Copellman; Edward and Suzzane Flasher, who knew Petitioner for 30 years and were aware of all that Petitioner went through; and (2) failed to obtain the victim's medical and psychological records.

**Claim Four:** Sheets failed to investigate and present mitigating evidence which would have substantially helped during sentencing.

**Claim Five:** Sheets and his partner, Rosselli, misled Petitioner into believing that he would get a 10-20 year sentence.

**Claim Six:** Sheets failed to object to the prosecutor's comment at sentencing that the crime was a "cold blooded and execution murder."

**Claim Seven:** The trial court abuse its discretion when it imposed a 20-40 year sentence.

**Claim Eight:** The District Attorney committed misconduct for failing to preserve evidence (the 911 tape and the computer hard drives).

**Claim Nine:** Woodin, Fairchild, and Litten were ineffective for failing to meet with Petitioner and raise all of the claims he wanted litigated in the PCRA proceedings.

[ECF No. 1 at 7-23. <u>See also</u> ECF No. 1-1 at 1-51].

Respondents have filed their Answer [ECF No. 8] and the relevant state court records, and Petitioner has filed a Reply [ECF No. 13].

**B.    Discussion**

**1.    Claims Seven and Nine are not cognizable in this federal habeas case**

In Claim Seven, Petitioner contends that Judge Morgan abused his discretion when he sentenced him to 20-40 years' imprisonment. Sentencing is a matter of state criminal procedure that does not fall within the purview of federal habeas review. <u>See</u>, <u>e.g.</u>, <u>Chapman v. United States</u>, 500 U.S. 453, 465 (1991); <u>Jones v. Superintendent of Rahway State Prison</u>, 725 F.2d 40, 42-43 (3d Cir. 1984). Thus, unless an issue of constitutional dimension is implicated in a sentencing argument, <u>see</u>, <u>e.g.</u>, 3 Charles A. Wright, et al., <u>Federal Practice and Procedure: Crim. § 550, Constitutional Limits on the Sentencing Decision</u> (4th ed. updated April 2014), this Court is without power to grant habeas relief. Petitioner's claim that Judge Morgan abused his discretion in sentencing him to a term of 20-40 years' fails to implicate his federal constitutional rights. Therefore, it is not cognizable in the federal habeas case.

In Claim Nine, Petitioner contends that Woodin, Fairchild,[5] and Litten were ineffective for failing to raise all of the claims he wanted to be litigated in the PCRA proceedings. Petitioner did not have a federal constitutional right to counsel during his PCRA proceeding, <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1987), and, for that reason, cannot receive habeas relief on a claim that his PCRA

---

[5]    Fairchild was appointed to represent Petitioner in his reinstated direct appeal. The Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. <u>See</u> <u>Evitts v. Lucey</u>, 469 U.S. 387 (1985). Thus, to the extent that Petitioner is arguing that Fairchild was ineffective in representing him before the Superior Court in his reinstated direct appeal at 305 WDA 2010, that claim is cognizable. However, for the reasons discussed below, it is procedurally defaulted because Petitioner did not argue in his PCRA appeal at 1997 WDA 2011 that Fairchild was ineffective as direct appeal counsel.

counsel was ineffective. 28 U.S.C. § 2254(i) ("[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254."). See also Coleman v. Thompson, 501 U.S. 722, 752-53 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings…. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. See Wainwright v. Torna, 455 U.S. 586 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance.)").

Based upon all of the foregoing, Claim Seven and that part of Claim Nine in which Petitioner is contending that his PCRA counsel were ineffective are denied because they are not cognizable.

### 2.     All of Petitioner's other claims, except for Claim One, are procedurally defaulted

A federal habeas court may not grant a state prisoner's petition for a writ of habeas corpus unless he has first presented his federal constitutional claims to the state courts. 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman, 501 U.S. at 731. See also O'Sullivan v. Boerckel, 526 U.S. 838, 842-49 (1999).

> [It is] principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. See Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 490-491, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973). Under our federal system, the federal and state "courts [are] equally bound to guard and protect rights secured by the Constitution." Ex parte Royall, 117 U.S. [241, 251, 6 S.Ct. 734, 740 (1886)]. Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950). See Duckworth v. Serrano, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam) (noting that the exhaustion requirement "serves to minimize friction between our federal

and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights").

Rose v. Lundy, 455 U.S. 509, 517 (1982) (footnote omitted).

Importantly, in order to exhaust a claim, "state prisoners must give the state courts *one full opportunity* to resolve any constitutional issues by invoking one complete round of the State's *established appellate review process*." O'Sullivan, 526 U.S. at 844-45 (emphasis added). In Pennsylvania, this requirement means that a petitioner in a non-capital case *must have presented every federal constitutional claim raised in his habeas petition to the Superior Court either on direct or PCRA appeal*. See, e.g., Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

Petitioner carries the burden of proving exhaustion of all available state remedies, see, e.g., Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). He has not met that burden. Importantly, in order to do so he must demonstrate that he raised each of the claims at issue to the Superior Court through the proper vehicle, not just that he raised the claim before a state court at some point. See, e.g., O'Sullivan, 526 U.S. at 845 (a petitioner must have presented a claim through the "established" means of presenting a claim in state court at the time); Ellison v. Rogers, 484 F.3d 658, 660-62 (3d Cir. 2007) (the petitioner's claims of ineffective assistance were not exhausted properly even though he had raised those claims on direct review, because state law required that ineffective assistance claims be raised in state post-conviction review, and the petitioner had not sought such review).

The relevant state court proceedings discussed above demonstrate that of the nine claims that Petitioner brings in this case, only two of them were raised in a proper direct or PCRA appeal to the Superior Court. Those two claims are: **Claim One**, in which Petitioner contends that Sheets was ineffective for failing to obtain a psychological evaluation in order to possibly pursue a mental infirmity defense; and, **Claim Seven**, in which Petitioner contends that Judge Morgan abused his discretion in

sentencing him to a term of 20-40 years of imprisonment.[6] As previously explained, Claim Seven does not implicate Petitioner's federal constitutional rights and, therefore, it is not cognizable in this action. Claim One is the only claim that Petitioner brings in this case that is both cognizable in federal habeas and properly exhausted in state court. Therefore, it is the only claim that this Court can review on the merits.

All of Petitioner's remaining claims are procedurally defaulted because he failed to exhaust them. See, e.g., Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000); Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). Like the exhaustion doctrine, the doctrine of procedural default is "grounded in concerns of comity and federalism," Coleman, 501 U.S. at 730, and it bars federal habeas review of a claim whenever the petitioner failed to raise it in compliance with a state's procedural rules. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wainwright v. Sykes, 433 U.S. 72 (1977); Lines, 208 F.3d at 162-69.

A petitioner whose habeas claim is procedurally defaulted can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, i.e., that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." See, e.g., Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986). In Martinez v. Ryan, — U.S. —, 132 S.Ct. 1309 (2012), the Supreme Court held for the first time that in states like Pennsylvania, where state law requires that claims of ineffective assistance of trial counsel be raised in an initial-review collateral proceeding (such as the PCRA), a petitioner may be able to establish "cause" sufficient to overcome a procedural default of "a substantial claim of ineffective

---

[6]    In Claim Six, Petitioner contends that Sheets was ineffective because he failed to object to comments made by the prosecutor at the sentencing hearing. [ECF No. 1 at 17]. Petitioner asserts that he raised Claim Six in his direct appeal at 305 WDA 2010. He did not. On direct appeal, Petitioner contended that the prosecutor's statements at the time of sentencing went against "the spirit" of the plea agreement. He did not contend that Sheets was ineffective for failing to object to the prosecutor's comments. (Appellant's Brief in Iverson v. Commonwealth, No.305 WDA 2010, at 17-19). Accordingly, Petitioner did not exhaust his state court remedies with respect to Claim Six.

assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective [under the standards of Strickland v. Washington, 466 U.S. 668 (1984)]." 132 S.Ct. at 1320.[7]

The holding in Martinez does not provide Petitioner with an avenue to establish "cause" for his default. Petitioner blames Litten for not raising his defaulted claims in his PCRA appeal at No. 1997 WDA 2011. Petitioner raised them in his second *pro se* PCRA motion (except for Claim Eight, which Petitioner contends is based upon newly-discovered information),[8] and argues that Litten should have continued to litigate them on appeal after Judge Morgan denied them. This argument has no merit.

First, Litten was charged with exercising her professional judgment in deciding which claims to litigate in Petitioner's PCRA proceeding. She also had an obligation under Rule 3.1 of Pennsylvania's Rules of Professional Conduct not to raise frivolous claims. See, e.g., Commonwealth v. Chmiel, 30 A.3d 1111, 1190-91 (Pa. 2011). As Petitioner's representative, Litten's informed decision not to raise certain claims on appeal to the Superior Court is not the type of conduct that is "external to the defense" such that it satisfies the "cause" requirement.

Second, the Court is mindful that Petitioner expressly asked Judge Morgan to appoint Litten as his PCRA appellate counsel because she was familiar with his case and "has proven to be quite effective[.]" (SCR at 651-52). Petitioner did ask Litten to raise additional claims in his appeal to the Superior Court, but she advised him that: "I appreciate your interest in your case, and I always discuss

---

[7]     The Supreme Court based its decision on what it determined to be an equitable right to seek relief from a procedural default in a federal habeas matter. It did not hold that a petitioner has a constitutional right to counsel in initial-review collateral proceedings such as the PCRA. Martinez, 132 S.Ct. at 1313-21. Moreover, the holding applies only to ineffective-assistance-of-trial-counsel claims. 132 S.Ct. at 1315-18, 1319 ("Coleman held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial.")

[8]     Under the PCRA, Petitioner had 60 days from the date the learned of his alleged new evidence to file another PCRA motion. 42 Pa.C.S. § 9545(b)(2). He did not do so. Therefore, as with the other claims discussed above, Petitioner did not exhaust his state court remedies with respect to Claim Eight.

legal strategy I intend to pursue with my client. However, please understand that decisions concerning legal matters are my decisions. I will review these decisions with you, but, ultimately, I will make the final determination about how to proceed." (SCR at 773). If Petitioner was dissatisfied with Litten because she chose not raise all of the claims he wished to litigate in Petitioner's appeal, he should have waived his right to PCRA counsel and proceeded *pro se* before the Superior Court.

Third, Petitioner cannot establish "cause" to overcome his default by merely demonstrating that he asked Litten to litigate his defaulted claims in his appeal to the Superior Court and that she declined to do so. Martinez requires more. Specifically, it requires that a petitioner seeking to establish "cause" for the default of his ineffective assistance of trial counsel claims demonstrate that those claims are "substantial," which is "analogous to the substantiality requirement for a certificate of appealability." Cox v. Horn, 757 F.3d 113, 119 (3d Cir. 2014) (quoting Martinez, 132 S.Ct. at 1318-20). Petitioner has not demonstrated that any of his defaulted claims are "substantial" such that they fall within Martinez's limited rule.[9]

Based upon all of the foregoing, Claims Two, Three, Four, Five, Six, Eight, and that part of Claim Nine in which Petitioner is contending that Fairchild was ineffective as direct appeal counsel must be denied because they are procedurally defaulted.

---

[9]     Another exception to the procedural default doctrine is the "miscarriage of justice" exception. It provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). The "miscarriage of justice" exception only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Schlup, 513 U.S. at 316. This is not one of the rare cases in which the fundamental miscarriage of justice rule is implicated.

### 3. Petitioner is not entitled to habeas relief on Claim One

Judge Morgan denied Claim One on the merits, and the Superior Court adopted his reasoning and expounded upon it. Because the state court adjudicated Claim One on the merits, this Court's analysis of it is governed by AEDPA's standard of review, which is codified at § 2254(d). Under this standard of review, it is not for this Court to decide whether the state court's decision was right or wrong. Rather, this Court has the authority to issue the writ of habeas corpus only if the state court's adjudication "resulted in a decision that was contrary to,[10] or involved an unreasonable application of,[11] clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in

---

[10]      In <u>Rountree v. Balicki</u>, 640 F.3d 530 (3d Cir. 2011), the U.S. Court of Appeals for the Third Circuit explained:

> The test for § 2254(d)(1)'s "contrary to" clause is whether the state court decision "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000), and <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)). Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent. <u>See Kane v. Garcia Espitia</u>, 546 U.S. 9 (2005).

640 F.3d at 537 (bracketed text in original) (parallel citations omitted).

[11]      The Court of Appeals for the Third Circuit described the test for § 2254(d)(1)'s unreasonable application clause as follows:

> "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." <u>Rompilla v. Beard</u>, 545 U.S. 374, 380 (2005) (quoting <u>Wiggins v. Smith</u>, 539 U.S. 510, 519, 520 (2003)). For purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003) (internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id.</u> at 75-76, 123 S.Ct. 1166 (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 411 (2000)). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. <u>Andrade</u>, 538 U.S. at 75.

<u>Rountree</u>, 640 F.3d at 537 (parallel citations omitted).

a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[12] 28 U.S.C. § 2254(d).

As explained above, the "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze Petitioner's ineffective assistance claim is governed by Strickland v. Washington, 466 U.S. 668 (1984). Since the state court applied the Strickland analysis when it evaluated Claim One, there can be no question that its adjudication withstands review under the "contrary to" clause of § 2254(d)(1). Williams, 529 U.S. at 406 ("a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."). Thus, the only question for this Court is whether the Superior Court's adjudication of Claim One was an "unreasonable application of" Strickland or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The Supreme Court has stressed the "highly deferential" review that this Court must accord the state court's adjudication in conducting this analysis:

> We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-

---

[12] The Court of Appeals for the Third Circuit set forth the test for § 2254(d)(2)'s "unreasonable determination of facts" clause this way:

The test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. See Rice v. Collins, 546 U.S. 333, 338-339 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)); see also Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence."). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen v. Pinholster, — U.S. — [ ], 131 S.Ct. 1388, 1401-03 (2011).

Rountree, 640 F.3d at 537-38 (parallel citations omitted).

court decision applied clearly established federal law erroneously or incorrectly." Id., at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." Id., at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than *de novo* review. Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

Renico v. Lett, 559 U.S. 766, 773 (2010). See also Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786 (2011) ("If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings…. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther."). This Court also is mindful that:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. at —, 129 S.Ct. 1411, 1420 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard*.

Harrington, 131 S.Ct. at 788 (emphasis added).

There is no basis whatsoever for this Court to conclude that the state court's adjudication of Claim One was either an "unreasonable application of" Strickland or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Attorney Sheets testified that he spoke with Petitioner about the possibility of raising a mental infirmities defense and ultimately made the strategic decision not to pursue the defense because there was not a sufficient basis to raise it. Sheets' decision is the type of

strategic choice that a court typically may not second guess, and this Court cannot conclude that no fairminded jurists could agree with the state court's evaluation of this claim. Harrington, 131 S.Ct. at 786 (§ 2254(d) ... preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents). See, e.g., Strickland, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); see also Thomas v. Varner, 428 F.3d 491, 500 (3d Cir. 2005) ("where it is shown that a particular decisions was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively unreasonable becomes 'virtually unchallengeable.'"). Moreover, the Superior Court determined that even if it accepted Petitioner's PCRA testimony as true, that testimony would not have entitled him to a heat of passion/voluntary manslaughter charge had he elected to go to trial. That decision is based upon state law, which this Court may not reexamine. Thus, if Petitioner had gone to trial the jury would not have had the option of convicting him of voluntary manslaughter. Finally, to the extent that Petitioner is asserting that he had a viable diminished capacity defense, that argument does not assist him because under Pennsylvania law the diminished capacity defense is used when "a defendant attempts to negate the element of specific intent to kill and, if successful, first degree murder is reduced to third degree murder." See Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005) (quoting Commonwealth v. McCullum, 738 A.2d 1007, 1009 (Pa. 1999)). Since Petitioner pleaded guilty to third degree murder, he had the same result he would have had if he had gone to trial and presented a successful diminished capacity defense.

Based upon all of the foregoing, Claim One is denied because it has not merit.

**C.**     **Certificate of Appealability**

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability is denied.

## II.

For the reasons set forth above, all of Petitioner's claims are denied and a certificate of appealability is denied on all claims.

An appropriate Order follows.


                                                    /s/ Susan Paradise Baxter
Dated: September 11, 2014                           SUSAN PARADISE BAXTER
                                                    United States Magistrate Judge

22

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTIAN S. IVERSON,                    )
                Petitioner,              )
                                         )        Civil Action No. 13-114 Erie
        v.                               )        Magistrate Judge Susan Paradise Baxter
                                         )
BRIAN THOMPSON, et al.,                  )
                Respondents.             )

## **ORDER**

        AND NOW, this 11th day of September, 2014, for the reasons set forth in the memorandum

opinion filed contemporaneously herewith, IT IS HEREBY ORDERED the petition for a writ of habeas

corpus is DENIED and a certificate of appealability is DENIED. It is further ORDERED that

Petitioner's motions to judgment [ECF No. 25] and to expedite relief [ECF No. 26] are DISMISSED.

        The Clerk of Court is directed to close this case.




                                        /s/ Susan Paradise Baxter
                                        SUSAN PARADISE BAXTER
                                        United States Magistrate Judge